# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THADDEUS FRITH**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  14-0702**

**STEVE RADER**                                       **SECTION "H"(4)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.   Current Status of the Case

On November 26, 2014, the undersigned Magistrate Judge issued a Report and Recommendation in which it was recommended that the federal habeas corpus petition filed by the petitioner, Thaddeus Frith ("Frith"), be dismissed without prejudice for presenting claims which were not exhausted in the state courts because three of the claims were pending review in the Louisiana Supreme Court and one claim had not been exhausted beyond the state trial court level.[2] After issuance of the Report, the Louisiana Supreme Court denied relief on Frith's writ application, which completed exhaustion of three of the claims raised in the federal petition and leaving one claim unexhausted.  In his objections to the Report, Frith requested that the Court dismiss the

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 12.

unexhausted claim and consider the three remaining claims.[3]  On December 12, 2014, the District

Judge granted Frith's request to dismiss the one claim and referred the matter to the undersigned

Magistrate Judge for further consideration of the three newly exhausted claims.[4]

## II.    Factual and Procedural Background

The facts and procedural history of Frith's state criminal proceedings were outlined in full

in the prior Report and Recommendation, and are repeated here for the Court's convenience.

On July 29, 2008, Frith was charged by Bill of Information in Orleans Parish with possession

of heroin with intent to distribute.[5]  He entered a plea of not guilty to the charge on August 6, 2008.[6]

The record reflects that, on July 8, 2008, Detectives Dean Moore and Chad Perez of the New

Orleans Police Department began a narcotics investigation in the 2600 block of Jackson Avenue in

New Orleans.[7]  Detective Moore assumed a position near the middle of the block while Detective

Perez remained in a patrol vehicle nearby.  Detective Moore soon saw a man, later identified as

Frith, standing in the middle of the block.

After about five minutes, an unknown black male wearing a red t-shirt approached Frith.

After a brief conversation, the unknown male reached into his right rear pants pocket and retrieved

an unknown amount of paper currency that he handed to Frith.  Frith turned around and walked

towards an alleyway next to an abandoned structure located at 2622 Jackson Avenue.

---

[3]Rec. Doc. No. 13.

[4]Rec. Doc. No. 14.

[5]St. Rec. Vol. 1 of 7, Bill of Information, 7/29/08.

[6]St. Rec. Vol. 1 of 7, Minute Entry, 8/6/08.

[7]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct
appeal.  *State v. Frith*, 102 So.3d 65, 67-68 (La. App. 4th Cir. 2011); St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2011-KA-
0187, pp. 2-4, 8/10/11.

Frith walked past the first foundation pier, knelt down, and quickly picked up an unknown object from underneath the house with his left hand.  He rose and placed the object in his right hand which he kept in a tight fist.  By this time, the unknown male in the red t-shirt had walked to the corner of Jackson and Magnolia where a small grocery store was located.  After exiting the alleyway, Frith walked toward the unknown male quickly passed the object in his right hand to him.  After accepting the object, the unknown male immediately separated from Frith, walking along Jackson Avenue back towards St. Charles Avenue and then out of sight.

After about five minutes, Frith walked up Magnolia Street and out of Detective Moore's line of sight.  Interested in the seller not the buyer, Detective Moore then radioed for Detective Perez to pick him up, and the two drove up Magnolia Street in the marked police unit.  Detective Moore spotted Frith standing in a group of men just a few houses away from the intersection.

The detectives got out, identified themselves, and advised Frith of his rights and that he was under investigation for a possible narcotics violation.  The officers returned to the abandoned structure at 2622 Jackson Avenue where Detective Moore found a clear plastic bag on the ground behind the first pier where he had seen Frith kneel down.  A closer inspection of the bag revealed that it contained twenty (20) clear plastic capsules containing an off-white powder substance that he recognized to be heroin.  Detective Moore also seized $209.00 in cash from Frith's right front pants pocket found during a search incident to his arrest.

Frith was tried before a jury on May 19, 2010, and was found guilty as charged.[8]  At a hearing held August 27, 2010, the Trial Court denied Frith's motions for a new trial and for post-

---

[8]St. Rec. Vol. 1 of 7, Trial Minutes, 5/19/10; St. Rec. Vol. 5 of 7, Verdict of the Jury, 5/19/10; Trial Transcript, 5/19/10.

verdict judgment of acquittal filed by newly retained counsel.[9]  The Trial Court sentenced Frith on September 24, 2010, to serve thirty-three (33) years and four (4) months in prison at hard labor.[10] The Trial Court also held a hearing on the State's multiple offender bill, and after the adjudication and waiver of legal delays, the court vacated the prior sentence and sentenced Frith as a multiple offender to serve thirty-three (33) years and four (4) months in prison at hard labor.[11]  On March 4, 2011, the Trial Court granted Frith's motion to reconsider the sentence and resentenced him to serve twenty (20) years in prison with the first five (5) years to be served without benefit of parole, probation, or suspension of sentence.[12]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Frith's retained counsel asserted four errors:[13] (1) the verdict was contrary to the law and evidence; (2) the Trial Court erred in denying the motion for post-verdict judgment of acquittal; (3) the Trial Court erred in denying the motion for new trial; and (4) new, undisclosed information, revealed that the conviction was based on the incredible testimony of Detective Moore.  On August 10, 2011, the Louisiana Fourth Circuit affirmed Frith's conviction and sentence finding the third claim was not subject to review

---

[9]St. Rec. Vol. 1 of 7, Minute Entry, 8/27/10; St. Rec. Vol. 5 of 7, Motion for New Trial, 6/9/10; Motion for New Trial, 8/27/10; Trial Court Order, 8/27/10; Motion for Post-Verdict Judgment of Acquittal, 8/27/10.

[10]St. Rec. Vol. 1 of 7, Sentencing Minutes, 9/24/10.

[11]St. Rec. Vol. 1 of 7, Multiple Bill, 8/25/10; Multiple Bill Hearing Minutes, 9/24/10; St. Rec. Vol. 5 of 7, Multiple Bill Hearing Transcript, 9/24/10.

[12]St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/4/11; St. Rec. Vol. 4 of 7, Motion to Reconsider, 10/22/10.

[13]St. Rec. Vol. 5 of 7, Appeal Brief, 2011-KA-0187, 4/11/11.

on appeal and otherwise was without merit, the fourth claim was not related to the record on appeal, and the first two assignments of error were without merit.[14]

On April 13, 2012, the Louisiana Supreme Court denied without stated reasons the writ application filed by Frith's counsel following direct appeal.[15]  Frith's conviction and sentence became final ninety (90) days later, on July 12, 2012, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

In the meantime, while Frith's appeal was pending review in the Louisiana Supreme Court, his counsel filed a motion for new trial on September 21, 2011, raising the claim that new information effected Detective Moore's credibility.[16]  After a hearing held on December 13, 2011, the Trial Court denied the motion as meritless by order issued on December 19, 2011.[17]  Frith did not seek review of this ruling.

On April 10, 2013, nine months after his appeal was final and sixteen months after denial of the last motion for new trial, Frith's counsel filed an application for post-conviction relief with the Trial Court which asserted the following grounds for relief:[18] (1) the State should have disclosed pretrial that Detective Moore was under federal investigation for obstruction of justice for filing

---

[14]*Frith*, 102 So.3d at 65; St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2011-KA-0187, 8/10/11.

[15]*State v. Frith*, 85 So.3d 1244 (La. 2012); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2011-K-1942, 4/13/12; La. S. Ct. Writ Application, 11-K-1942, 9/8/11; St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2011-K-1942, 9/8/11.

[16]St. Rec. Vol. 2 of 7, Motion for New Trial, 9/21/11.

[17]St. Rec. Vol. 2 of 7, Trial Court Order, 12/19/11.

[18]St. Rec. Vol. 2 of 7, Application for Post-Conviction Relief, 4/10/13.

false police reports and lying to federal authorities; (2) the conviction was based on testimony that was not subject to meaningful and complete cross-examination because of undisclosed information; (3) he was denied effective assistance of trial counsel; and (4) the evidence fails to support a conviction for possession with intent to distribute heroin where Frith is actually innocent.

After receiving a response from the State, the Trial Court denied the application on July 15, 2013.[19]  The Louisiana Fourth Circuit denied as meritless the related writ application filed by Frith's counsel seeking review of only the first three post-conviction claims.[20]  The Louisiana Supreme Court also denied Frith's related writ application without stated reasons on November 21, 2014.[21]

## III.   Federal Petition

Three claims remain for the Court's review from Frith's *pro se* federal petition for habeas corpus relief filed by the Clerk of this Court on March 27, 2014:[22] (1) the State should have disclosed at pretrial that Detective Moore was under federal investigation for obstruction of justice for filing false police reports and lying to federal authorities, and the failure to do so prevented defense counsel from adequately challenging the Detective's credibility; (2) the conviction was based on testimony that was not subject to meaningful and complete cross-examination because of undisclosed information; and (3) he was denied effective assistance of trial counsel where counsel failed to adequately pursue pretrial discovery to force the State to disclose the FBI investigation.

---

[19]St. Rec. Vol. 2 of 7, Trial Court Judgment, 7/15/13; State's Response, 7/22/13; Traverse, 7/22/13.

[20]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2013-K-1225, 12/10/13; 4th Cir. Writ Application, 2013-K-1225, 9/6/13.

[21]*State v. Frith*, 152 So.3d 889 (La. 2014); St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 14-KK-0026, 1/8/14.

[22]Rec. Doc. No. 1.

The State's initial answer in opposition to Frith's petition addressed only procedural defenses including his failure to exhaust state court remedies.[23]  The threshold questions of timeliness, procedural default and failure to exhaust under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] have been resolved by the Court and need not be reassessed in this Report.  The Court will proceed without need for further briefing.

**IV.    Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

---

[23]Rec. Doc. No. 11.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court

case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.     Evidence of Detective Moore's Federal Investigation (Claim Nos. 1 and 2)

Frith argues that the State violated his constitutional right to due process and a fair trial when the prosecutors failed to advise defense counsel that Detective Moore was under investigation by the FBI when he arrested Frith and when he testified at the trial. He contends that this information was critical to challenging Moore's credibility where the only real evidence of Frith's guilt were the statements made by Detective Moore. As a result, the State withheld relevant impeachment information preventing him from using it to cross-examine Detective Moore.

Frith's counsel first asserted similar arguments on direct appeal to the Louisiana Fourth Circuit urging the Circuit Court to vacate the conviction because Detective Moore had, since trial,

been indicted and was being tried for making false statements to the FBI and obstruction of justice.[25] The Louisiana Fourth Circuit refused to consider the claim as not related to the record on appeal.[26]

During pendency of direct review in the Louisiana Supreme Court, Frith's counsel filed a motion for new trial asserting the credibility issues arising from Detective Moore's federal investigation.[27]  The state trial court held a hearing on the matter on December 13, 2011, at which Frith's trial counsel testified that he did not know anything about the federal investigation of Detective Moore.[28]   The Trial Court denied the motion finding that there was no law or jurisprudence that required the State to notify a defendant of a federal investigation that had not resulted in a conviction before the trial, referencing La. Code Evid. art. 608(B).[29]

Months later, Frith's counsel re-urged these arguments in Frith's application for post-conviction relief, on which the state trial court denied relief without stated reasons.[30]  On its review, the Louisiana Fourth Circuit denied relief on the following grounds:[31] (1) reputation evidence regarding Detective Moore would not have been admissible under La. Code Evid. 609.1; (2) there was no testimony by Detective Moore at trial that would have been subject to challenge for a showing of bias or interest in the prosecution under La. Code Crim. P. art. 607(D); (3) even had

---

[25]St. Rec. Vol. 5 of 7, Appeal Brief, 2011-KA-0187, 4/11/11.  Later pleadings assert that these charges were related to the police corruption cases arising from the infamous "Danziger Bridge incident."  For information specific to Detective Moore, *see United States v. Matthew Dean Moore*, Cr. 10-213"L"(2) (E.D. La.).

[26]*Frith*, 102 So.3d at 71; St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2011-KA-0187, p. 9, 8/10/11.

[27]St. Rec. Vol. 2 of 7, Motion for New Trial, 9/21/11.

[28]St. Rec. Vol. 2 of 7, Trial Court Judgment, 12/19/11.

[29]*Id.*

[30]St. Rec. Vol. 2 of 7, Trial Court Judgment, 7/15/13.

[31]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2013-K-1225, 12/10/13.

counsel filed written discovery, there was no law that would have required the State to disclose the federal investigation where there had been no indictment or conviction; and (4) Moore was not indicted until months after Frith's trial.  This was the last reasoned opinion on the issue where the Louisiana Supreme Court denied relief without comment.[32]  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (holding that when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

"'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'"  *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471 at *6 (5th Cir. Apr. 16, 2002) (quoting *United States v. Scheffer*, 523 U.S. 303, 329 n.16 (1998)).  These violations will only occur when the defendant is denied the opportunity to cross-examine a witness, prevented from putting a witness on the stand, or prevented from introducing material evidence.  *Id*.

The prosecution's production of impeachment evidence is addressed by the rules announced in *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court required that state prosecutors produce exculpatory and impeachment evidence.  *Brady*, 373 U.S. at 87.  The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is favorable impeachment evidence.  *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87.  Claims pursuant to *Brady* involve "'the discovery of evidence after trial of information which had been known to the prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255,

---

[32]*Frith*, 152 So.3d at 889.

257 (5th Cir. 1994) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim."  *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence).  *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case.  *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); *Bigby v. Cockrell*, 340 F.3d 259, 279 (5th Cir. 2003).

Three factors must be considered to evaluate an alleged *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 281-82).  Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

In *Kyles*, the Supreme Court extended the *Brady* ideal and held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the

government's behalf in the case, including the police.  But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S., at 87, 83 S.Ct., at 1196-1197) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."  *Kyles*, 514 U.S. at 438.

A claim under *Brady* is a mixed question of law and fact.  *Higgins v. Cain*, 434 F. App'x 405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)).  Under the applicable standard of review, this Court therefore must determine if the state court's decision to denying relief was contrary to or involved an unreasonable application of Supreme Court precedent.

Frith asserts that the evidence of the FBI investigation would have served as impeachment evidence to place Detective Moore's credibility at issue before the jury, and because he was the sole fact witness for the State, it was likely that the result of the trial would have been different.  Under the *Brady* disclosure rules, the United States Supreme Court has held that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule."  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972) (internal quotations and citation omitted).

However, in addressing the first and third factors under *Brady*, the Supreme Court also has reasoned that information that is not admissible under state law "is not 'evidence' at all."  *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995).  Therefore, inadmissible information is not material under *Brady*

because, "[i]n short, it is not 'reasonably likely' that disclosure of the [information] - inadmissible under state law - would have resulted in a different outcome at trial." *Wood*, 516 U.S. at 8.[33]

In this case, the Louisiana courts declined to find the information about Detective Moore to be material impeachment evidence. The FBI investigation would not have been admissible at trial under Louisiana law because there was no indictment, no arrest and no conviction of Detective Moore before Frith's trial. As relied upon by the state courts, La. Code Evid. art. 607(D)(1) provides that a party can attack the credibility of a witness by introducing extrinsic evidence to show the witness's bias or interest in the case, unless otherwise prohibited by statute. Although Frith invokes this contention, he has not offered more than conclusory assertions that any bias existed or that Moore had an interest in the outcome of the proceeding.

Furthermore, in a criminal case, pursuant to La. Code Evid. art. 609.1, only offenses for which the witness has been convicted are admissible to challenge his credibility, and no inquiry is permitted into matters for which there has been only an arrest warrant issued, indictment, a prosecution or an acquittal. *See State v. Johnson*, 664 So. 2d 94, 99 (La. 1995) ("Evidence regarding previous arrests, indictments, prosecutions or other criminal proceedings not resulting in convictions is prohibited."). The state courts relied on these state rules of law to determine that the information about the FBI investigation was not admissible.

Frith's defense counsel would have been bound by the prohibitions within these state law provisions. Counsel could not have relied on the FBI investigation as a challenge to Detective

---

[33]The Court is aware that the lower federal courts have not reconciled the link between the admissibilty of evidence and its materiality under *Brady*. *See, e.g.*, *Felder v. Johnson*, 180 F.3d 206, 212 (5th Cir. 1999). However, federal habeas relief cannot be granted merely because a state court's decision is contrary to or an unreasonable application of jurisprudence from the lower federal courts. The rules of law to be followed under the AEDPA are those clearly established by the Supreme Court, not how they are applied by the lower federal courts. *See White*, 134 S. Ct. at 1706.

Moore's credibility at trial.  Because the information related only to an investigation, it was inadmissible under Louisiana law, and in the eyes of the Supreme Court, would not have constituted evidence at all for purposes of *Brady*.

Following the Supreme Court's reasoning in *Wood*, because the information about the FBI investigation was not admissible under Louisiana law, it could not have been introduced at trial to impeach Detective Moore.  Because the information could not be used to impeach Moore at trial, then it necessarily follows that the information would not have changed the outcome of the trial. Thus, as the state courts resolved, the information was not material under *Brady*.

Furthermore, under *Brady*'s second factor, there is nothing in the record to establish that the State suppressed evidence of the FBI investigation from the defense.  As the parties assert, Moore's indictment was not issued until several months after Frith's trial.  Nothing in the record demonstrates that the prosecutor knew or could have discovered from matters within the prosecution's control that Moore was the target of an FBI investigation at the time of Frith's trial.  The *Brady* disclosure requirement would not extend beyond those bounds.

Frith also has not referenced anything to establish that Detective Moore himself  knew that he was under investigation.  Assuming he did, this Court can locate no Supreme Court precedent that would have required Moore (as a key state witness and investigating officer) to disclose that fact to the prosecutor in Frith's unrelated state criminal proceeding.  The Supreme Court precedent does not mandate that a state prosecutor inquire into every possibility that a witnesses might be under federal investigation in matters unrelated to the state's case. *See Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010); *Woolfolk v. Bowersox*, No. 09-CV-367, 2012 WL 943095, at *6-7 (E.D. Mo. Feb. 15, 2012), *adopted*, 2012 WL 942955, at *1 (E.D. Mo. Mar. 20, 2012).

15

Thus, based on the Supreme Court's precedent referenced above, the state courts' denial of relief based on the inadmissibility of the FBI investigation information and its lack of materiality, was not contrary to, or an unreasonable application, of *Brady*.

## VI.  Effective Assistance of Counsel (Claim No. 3)

Frith argues that his counsel provided ineffective assistance when he failed to file written discovery that may have forced the State to produce information about the FBI's investigation of Detective Moore under the requirements of *Brady* and *Kyles*.

As outlined above, Frith raised this argument on post-conviction review and was denied relief at each level of the state courts. *Ylst*, 501 U.S. 797. The Louisiana Fourth Circuit reasoned that there was no law to support Frith's contention that had counsel filed for discovery that the State would have been required to disclose an FBI investigation where there was no indictment or conviction.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d

292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (finding that counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not

whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105(citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles*, 556 U.S. at 123).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Frith asserts that his trial counsel should have filed for discovery which would have forced the prosecutor to disclose evidence of the FBI investigation.  The allegation as presented assumes that trial counsel somehow would have known to ask for the information about Detective Moore and the investigation.  This is highly speculative and unlikely since Frith concedes that his trial counsel did not know anything about the investigation before or during trial.

The allegation also directly involves resolution of whether the State had a duty to disclose the information under *Brady*, or the State had the requisite knowledge and access to the information.  As discussed above, Frith has not established either condition.  The inadmissible evidence of the on-going FBI investigation without an arrest, indictment or conviction was not admissible and did not constitute material evidence under *Brady*.  Thus, the prosecutor would not have been obliged by law to disclose the information, assuming it was known and discoverable under the parameters of *Brady*.

In addition, the question of *Brady* materiality and *Strickland* prejudice are effectively the same.  *Gentry v. Sinclair*, 705 F.3d 884, 906 (9th Cir. 2013) (citing *Bagley*, 473 U.S. at 682), *cert. denied*, __ U.S. __, 134 S. Ct. 102 (2013).  As already resolved, the FBI investigation information was not admissible under Louisiana law and could not have been used by Frith's trial counsel to

19

impeach Detective Moore . Thus, there has been no showing of prejudice.  In other words, Frith can

not establish that, but for counsel's failure to move for discovery, the outcome of trial would have

been different.  The evidence of the FBI investigation would not have been admitted at trial and

therefore, could not have impacted the jury's verdict.

Denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme

Court law.  Frith is not entitled to relief on this issue.

**VII.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Frith's petition for issuance of a writ

of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH**

**PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 24th day of February, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December
1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.